1
2
3                    UNITED STATES DISTRICT COURT
4                   NORTHERN DISTRICT OF CALIFORNIA
5
6
7   In re O'REILLY & COLLINS,              No. C 13-3177 PJH
8          Debtor.                         Bankr. Case No. 12-33016 DM
9   _____/      **ORDER ON BANKRUPTCY
10                                         APPEAL**
11        Appellant Michael Danko appeals the bankruptcy court's May 16, 2013 order

12   denying Danko's motion for an order that the automatic stay of 11 U.S.C. § 362(a) is

13   inapplicable to Danko's judgment and his underlying claims against Terry O'Reilly

14   ("O'Reilly").  For the reasons set forth below, the court AFFIRMS the order of the

15   bankruptcy court.

16                               **BACKGROUND**

17   **A.    Summary of State Court Proceedings**

18        The following summary of background facts is taken from Danko's memorandum of

19   points and authorities in support of his motion for an order that the automatic stay is

20   inapplicable to his judgment and underlying claims against Terry O'Reilly, filed in the

21   bankruptcy court, and from documents filed in the underlying state court litigation, cited in

22   the briefs on appeal from the decision of the bankruptcy court:

23        Danko, an attorney, worked with Terry O'Reilly for over 13 years and became a

24   minority shareholder in the law firm, once named O'Reilly & Danko and now named

25   O'Reilly & Collins, the present debtor, until 2009 when his employment was terminated.

26   Danko filed a lawsuit in December 2009 in the San Francisco County Superior Court, titled

27   *Michael Danko v. Terry O'Reilly, an individual; O'Reilly & Collins, a Professional*

28   *Corporation, et al.,* Case No. CGC-09-495203 (the "state court action").  After a jury trial,

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   the jury found that debtor O'Reilly & Collins breached its contract with Danko and

2   wrongfully terminated him in 2009 in order to avoid paying Danko $2.4 million in

3   compensation due to him.  Thereafter, on July 11, 2012, a judgment was entered in the

4   superior court in favor of Danko and against debtor as follows: for $2,418,744.00 in

5   damages and expense reimbursement; for prejudgment interest in the sum of $789,893.08;

6   for waiting time penalties pursuant to Labor Code section 203 in the amount of $41,538.46;

7   total of $3,250,175.54; plus attorney's fees and costs as subsequently to be determined by

8   the court.  On July 13, 2012, Danko caused a notice of judgment lien, naming debtor as the

9   judgment debtor, to be filed with the secretary of state with respect to the judgment.

10          On October 18, 2012, the superior court entered an award of attorney's fees in the

11  amount of $1,230,609.50 and costs in the amount of $53,134.76 in favor of Danko and

12  against debtor.  The superior court also held O'Reilly jointly and severally liable for

13  $107,397.50 of the fees awarded to Danko due to discovery misconduct.  Oct. 18, 2012

14  Order Regarding Motions for Attorneys Fees and Costs at 7.  On October 26, 2012, Danko

15  caused an amended notice of judgment lien to be filed, increasing the amount required to

16  satisfy the judgment to include the award of fees and costs.

17          On or about November 13, 2012, Danko filed a motion to amend the judgment to

18  add Terry O'Reilly as a judgment debtor for all of the amounts owed Danko on alter ego

19  grounds and in the interest of justice pursuant to California Code of Civil Procedure § 187.

20          On March 25, 2013, the superior court issued its Statement of Decision Granting

21  Plaintiff's Motion to Amend the Judgment to add O'Reilly as a judgment debtor on the

22  judgment.  The superior court found "that Danko has met his burden of establishing alter

23  ego, and that there are no meritorious defenses to the motion."  March 25, 2013 slip op. at

24  2.  On March 29, 2013, the superior court entered the amended judgment in favor of Danko

25  and against debtor and O'Reilly, jointly and severally, as follows: $2,418,744.00 in

26  damages and expense reimbursement; for prejudgment interest in the sum of $789,893.08;

27  for waiting time penalties pursuant to Labor Code section 203 in the amount of $41,538.46;

28  for attorney's fees in the amount of $1,230,609.50; and for costs in the amount of

United States District Court

For the Northern District of California

$53,134.76; total of $4,533,919.80.  The amended judgment further provided that judgment was entered in favor of O'Reilly and against Danko on the causes of action for breach of oral contract, non-payment of wages, waiting time penalties, wrongful termination, breach of the implied covenant of good faith and fair dealing, and quantum meruit: "Terry O'Reilly is awarded attorney's fees in the amount of $72,285.00 and costs in the amount of $1,383.00 against Michael Danko."  O'Reilly filed a notice of appeal from the amended judgment on May 24, 2013, which remains pending before the First Appellate District, Case. No. A138784.

After accounting for payments received from debtor, Danko represents that the principal amount remaining due on the judgment is $3,897,380.72.

**B.    Bankruptcy Proceedings**

On October 8, 2012, debtor O'Reilly & Collins ("debtor" or the "law firm"), a professional corporation, executed a general assignment for the benefit of creditors, pursuant to California law, to Credit Management Association.  An involuntary bankruptcy petition under Chapter 7 was filed against debtor on October 25, 2012, by Danko and two other petitioning creditors, RNS Healthcare Consultants, Inc. and Shirin Razavian.  On November 15, 2012, interested party Credit Management Association filed a motion to dismiss the involuntary petition, in which debtor O'Reilly & Collins and creditor California Bank & Trust (the "bank") joined.  On February 5, 2013, about two months after the state court held a hearing on Danko's motion to amend judgment, the bankruptcy court entered the order for relief under Chapter 7 against debtor and, by separate order, denied the motion to dismiss.  Trustee Barry Milgrom was appointed as Chapter 7 trustee to administer debtor's financial affairs.

On or about April 1, 2013, the trustee caused to be served, in connection with the state court action, a Notice of Bankruptcy Filing, Appointment of Chapter 7 Trustee on Behalf of O'Reilly & Collins and of Automatic Stay Pursuant to 11 U.S.C. § 362(a).  The trustee's notice stated, "Based on the applicability of the automatic stay, any attempts to obtain a judgment or enforce a judgment against Defendant Terry O'Reilly for claims based

United States District Court

For the Northern District of California

1  upon fraudulent conveyances and/or alter ego, are property of the bankruptcy estate and

2  subject to the stay imposed under 11 U.S.C. § 362(a)(3)."

3      On April 12, 2013, Danko filed a motion for an order that the automatic stay is

4  inapplicable to Danko's judgment and his underlying claims against O'Reilly.  The motion

5  was opposed by the bank and by the trustee, with O'Reilly joining in the trustee's

6  opposition.  Following a hearing on the motion, the bankruptcy court denied Danko's motion

7  and held that the stay applies to prosecution by Danko against O'Reilly.  Danko now

8  appeals from the bankruptcy court's May 16, 2013, order denying his motion.

9                          **ISSUES PRESENTED**

10     Danko presents the following issues on appeal:

11     (1)    Whether the bankruptcy court erred in holding that the automatic stay of 11

12            U.S.C. § 362(a)(3) precludes Danko from enforcing his judgment for unpaid

13            wages and for attorneys' fees against non-debtor Terry O'Reilly.

14     (2)    Whether the bankruptcy court erred in finding that the automatic stay

15            precludes Danko from enforcing his judgment for failure to pay wages and for

16            attorneys' fees against non-debtor Terry O'Reilly, even though Danko's

17            judgment is likely broader than any claim that might be maintained by the

18            trustee against Terry O'Reilly.

19     (3)    Whether the bankruptcy court's order that the automatic stay precludes

20            Danko from enforcing his judgment for failure to pay wages and for attorneys'

21            fees against non-debtor Terry O'Reilly is overbroad because it precludes

22            Danko from enforcing his judgment against non-debtor Terry O'Reilly for

23            attorneys' fees in the amount of $107,397.50, which arose from Terry

24            O'Reilly's personal discovery misconduct.

25                          **STANDARDS OF REVIEW**

26     The court reviews the bankruptcy court's conclusions of law de novo, and its findings

27  of fact for clear error.  *Citibank v. Eshai (In re Eshai)*, 87 F.3d 1082, 1086 (9th Cir. 1996).  A

28  factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is

                                      4

1    left with the definite and firm conviction that a mistake has been committed." *Anderson v.*
2    *City of Bessemer*, 470 U.S. 564, 573 (1985).

3                                        **DISCUSSION**

4    **A.    Legal Standard**

5          Pursuant to 11 U.S.C. § 362, a petition in bankruptcy operates as a stay against acts
6    that may affect property of the bankruptcy estate.  The automatic stay is designed to
7    "'protect debtors from all collection efforts while they attempt to regain their financial
8    footing.'"  *In re National Environmental Waste Corp.,* 129 F.3d 1052, 1054 (9th Cir. 1997)
9    (quoting *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992)).
10   Actions taken in violation of the stay are void.  *Id.*  However, section 362(d) "'gives the
11   bankruptcy court wide latitude in crafting relief from the automatic stay, including the power
12   to grant retroactive relief from the stay.'"  *Id.* (quoting *Schwartz*, 954 F.2d at 572).  A
13   decision to lift the automatic stay under § 362 is within the discretion of the bankruptcy
14   court.  *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108 (9th Cir. 1995).

15         Generally, "[a] bankruptcy trustee is the representative of the bankrupt estate and
16   has the capacity to sue and be sued."  *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002
17   (9th Cir. 2005) (citing 11 U.S.C. § 323).  "Among the trustee's duties is the obligation to
18   'collect and reduce to money the property of the estate.'"  *Id.* (quoting 11 U.S.C. § 704(1)).
19   Section 541 of the Bankruptcy Code defines property of the bankruptcy estate as "all legal
20   or equitable interests of the debtor in property as of the commencement of the case."  11
21   U.S.C. § 541(a).  The scope of this provision is broad and includes causes of action.
22   *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9 (1983).

23         The trustee may assert only claims belonging to the debtor corporation and 'has no
24   standing generally to sue third parties on behalf of the estate's creditors.'"  *Ahcom, Ltd. v.*
25   *Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010) (quoting *Smith*, 421 F.3d at 1002).  When
26   the trustee does have standing to assert a debtor's claim, that standing is exclusive and
27   divests all creditors of the power to bring the claim.  *Id.* (citing *Estate of Spirtos v. One San*
28   *Bernardino Cnty. Superior Court Case*, 443 F.3d 1172, 1176 (9th Cir. 2006)).  State law

United States District Court
For the Northern District of California

1   determines whether a claim belongs to the trustee or to the creditor.  *Id.* (citing *Butner v.*
2   *United States*, 440 U.S. 48, 54–55 (1979)).

3   **B.      Bankruptcy Court's Ruling**

4           The bankruptcy court held oral argument on Danko's fully briefed motion for an order
5   that the automatic stay is inapplicable to his judgment and underlying claims against
6   O'Reilly.  Danko argued below that his alter ego claim and resulting judgment against
7   O'Reilly were not property of the bankruptcy estate, citing *Ahcom* for the principle that
8   California law does not recognize a freestanding, general alter ego claim that will allow a
9   corporation and its shareholders to be treated as alter egos for purposes of all the
10  corporation's debts, and that the trustee is not a general representative of all creditors.  *See*
11  *Ahcom*, 623 F.3d at 1252.  Danko argued that his judgment against O'Reilly in state court
12  was not a judgment to recover fraudulent transfers, but was "based upon O'Reilly's role in
13  abusing the corporate form in order to prevent Danko from receiving the legal fees to which
14  Danko was entitled after he left the Debtor firm."  Appellee Trustee's Excerpts of Record
15  ("TE") 180.

16          In their respective oppositions, both the trustee and the bank argued that Danko
17  sought to amend the state court judgment based on allegations that O'Reilly distributed the
18  debtor's assets for inadequate or no consideration, which would support the trustee's
19  fraudulent conveyance claims against O'Reilly.  The trustee represented that he "intends to
20  pursue avoidance and recovery of the fraudulent conveyances made by the Debtor to Mr.
21  O'Reilly for the benefit of the estate."  TE 175.

22          The bankruptcy court reviewed the state court's findings on O'Reilly's alter ego
23  liability and found that although the state court did not make a fraudulent conveyance
24  determination, the "overwhelming tone" of the state court's alter ego ruling sounded in
25  fraudulent transfers.  TE 149-50.  The bankruptcy court noted the particular findings of the
26  state court, as summarized by O'Reilly in his joinder to the trustee's opposition:

27
28

6

- "Mr. O'Reilly used the firm to make payments to his son and former wife for no apparent business reason, and to deposit tens of thousands of dollars in his current wife's bank account."

- "Since the trial, Mr. O'Reilly has entered into a transaction whereby the corporation is purportedly loaning hundreds of thousands of dollars to his personal trust, with no repayment of principal for 15 years."

- "The corporation has spent tens of thousands of dollars for payment of Mr. O'Reilly and his wife's credit card bills, without promissory notes or interest."

- "The payments on the credit cards include substantial amounts for personal items such as luxury vacations, clothing and wine."

- "The corporation has paid for trips to rugby tournaments, personal property taxes, and hundreds of thousands of dollars to purchase, transport, and repair vintage cars for Mr. O'Reilly's personal use."

- "The law firm has paid more than $400,000 to remodel ranch property in Idaho for Mr. O'Reilly, an expense apparently carried on the firm's balance sheet as "building improvements," but now transferred to Mr. O'Reilly's personal trust in exchange for an unsecured promissory note with no principal payments until 2027."

March 25, 2013 slip op. at 4-5 (footnotes and record citations omitted). *See* TE 141; Appellant's Designation of Record, Tab 9 at 4-5.

The bankruptcy court also reviewed the arguments made by Danko in support of his motion to amend the judgment and found that Danko repeatedly alleged injury to the debtor law firm: "Danko's Status – refers to as 'looting of the corporation'; 'O'Reilly repeatedly diverted large amounts of firm assets'; 'O'Reilly stripping the firm of cases for no consideration.'" TE 150-51. The bankruptcy court rejected Danko's argument that he was only enforcing a state court judgment against O'Reilly and that the trustee can pursue claims for fraudulent conveyances and avoidance of any transfer, reasoning as follows:

7

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

. . . [I]t strikes me that Mr. Monroe [counsel for Danko] is arguing that this alter ego theory is different, but it's still premised on facts, and we are told repeatedly there's no cause of action for alter ego. It's a procedural remedy, and CCP 187 says if there are facts that say Joe is liable for the liabilities of Joe, Inc., then Joe is liable. But to the extent that they are the same facts that would support a case of the Trustee against Joe, then there is an interference with the bankruptcy, and the fact that there may be some theories of the alter ego claim and some measure of damages that would be other than the Trustee could recover, it's sort of like – it's sort of like partially owned property. If the Trustee owned an undivided fractional interest in Black Acre, the cases are clear that the creditor can't foreclose on Black Acre, and it's like here, that the Trustee has a portion of the claim that . . . Mr. Danko has established in the form of Judge Miller's ruling, and we can't determine what percentage of that, but we know that some of it is there, and if it turns out that the Trustee doesn't have a fraudulent transfer theory at all, then obviously Mr. Danko's claim shouldn't be interfered with. But I can't help but say, Mr. Monroe, the stay has to apply at least as long as there is a colorable view or a reasonable view that some portion of the claims that you are – that some portion of the facts that gave rise to the outcome you reached are the same operative facts that either could have supported a fraudulent transfer case by you and could now support a fraudulent transfer case by the Trustee. And I can't say, if I stick with my analogy, that there's no stay because the Trustee only owns some undivided portion of this set of bundle of rights, so I think that leads me to the conclusion – I don't think; that leads me to the conclusion on this record that the stay applies. But I acknowledge what I acknowledged to you before, Mr. Danko would appear to be able to recover more than the Trustee can recover, but that doesn't mean the stay doesn't apply, because the stay – there is an interference and to me, it's 362(a)(3) . . . I think the whole notion that fraudulent transfers are blocked by the automatic stay evolves out of 362(a)(3) . . . .

TE 155-57. The bankruptcy court further found that Danko's enforcement of the alter ego remedy against O'Reilly could interfere with the trustee's ability to pursue his fraudulent conveyance claims for the benefit of all creditors. TE 152 ("we don't have an indication of whether Mr. O'Reilly can respond to the two judgments, and admittedly, some of the recoveries by one side will offset the need to recover by the other side").

Addressing Danko's argument that no Ninth Circuit authority has held that the automatic stay applied to creditor claims independent of the estate's fraudulent transfer claims where there were overlapping facts in the two claims, the bankruptcy court reasoned as follows:

. . . I'm starting with Judge Miller's reasoning and your client's brief that hammers more than once and more than twice, and three

8

United States District Court

For the Northern District of California

times or more times, damage to the corporation, damage to – looted the corporation. These are all these bad things that he did, . . . and *Ahcom* I think – and as does *Shaoxing*, make it clear that if there's damage to the corporation, that is the Trustee's claim. . . .

It's a difficult question, and it's an intriguing question, and you know, maybe as you said if I said the stay doesn't apply, and we put the Trustee to the burden of seeking an injunction, maybe you can persuade me to modify the stay in some respects, in some aspects. I don't know. I simply can't get away from the facts that were underlying the theory, and I think that you can't . . . get around the consequence by just putting a different label on it. You had a very convenient and relatively easy – I wouldn't say relatively easy – you had a very convenien[t] device in the California Civil Procedure Code that says, you just add these other defendants if you think somebody else is liable, and of course, you don't have to provide fraudulent transfer. But the fact is you laid out a bunch of them. If your argument to Judge Miller had been lack of corporate formalities; they never had a meeting; they never had a Board, blah-blah-blah, you would have persuaded me in no time. But it's so much of what you presented and so much is her decision, it's got fraudulent transfer footprints and fingerprints all over it, and that to me is the significant difference. I'll wait til the next case when there's not an overwhelming set of common facts that make for the same case. So I'll hold that the stay applies, and leave it at that for now.

TE 158-59. Based on these findings, the bankruptcy court denied Danko's motion and concluded that the automatic stay barred enforcement of Danko's alter ego judgment against O'Reilly: "Any prosecution against Terry O'Reilly of that certain amended judgment filed on March 29, 2013 in favor of Michael S. Danko, which added Terry O'Reilly as a joint and several judgment debtor under the judgment originally entered against the Debtor on July 11, 2012 in [the state court action] is stayed pursuant to § 362(a)(3) of the Bankruptcy Code." May 16, 2013 Order.

**C.    Analysis**

**1.    Danko's Judgment Against O'Reilly Is Subject to Automatic Stay**

Whether property is property of the estate is a question of law subject to de novo review. *In re Hernandez*, 483 B.R. 713, 719 (B.A.P. 9th Cir. 2012) (citations omitted).

When a chapter 7 bankruptcy petition is filed, an estate automatically is created that comprises essentially all property owned by the debtor. § 541(a); *FitzSimmons v. Walsh (In re FitzSimmons)*, 725 F.2d 1208, 1210 (9th Cir. 1984). When the involuntary petition for bankruptcy relief was filed on October 25, 2013, an estate was created. 11 U.S.C. § 541(a).

9

United States District Court
For the Northern District of California

"This estate comprises the property that will ultimately be available to satisfy the costs of bankruptcy administration and pay off the claims of creditors, subject to the right of the debtor to declare some of the estate exempt under 11 U.S.C. § 522(b)." *In re FitzSimmons*, 725 F.2d at 1210.  "The scope of the estate is broad: it includes, with two minor exceptions, 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Id.* (citing 11 U.S.C. § 541(a)(1)).

California law recognizes that "[t]he trustee of a bankrupt corporation can maintain an action against a defendant based on an alter ego theory if there is some allegation of injury to the corporation that gives the corporation a right of action against the defendant." *Shaoxing Cnty. Huayue Imp. & Exp. v. Bhaumik*, 191 Cal. App. 4th 1189, 1198-99 (2011) (citing *Stodd v. Goldberger*, 73 Cal. App. 3d 827, 833 (1977)).  "However, the trustee of a bankrupt corporation 'cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action in it against defendants.  In the absence of any such allegation, the asserted cause of action belongs to each creditor individually.'" *Id.* (quoting *Stodd*, 73 Cal. App. 3d at 833).  The Ninth Circuit has recognized that certain causes of action seeking alter ego liability, which allege injury to a debtor corporation, are properly brought by the trustee, such as fraudulent conveyance, conversion and theft.  *Ahcom*, 623 F.3d at 1252 ("'*an action* by a trustee in bankruptcy to recover assets of the bankrupt by setting aside *fraudulent and preferential transfers*'; '*an action* by creditors and a trustee in bankruptcy for *conversion by a corporate stockholder of assets of the bankrupt corporation*'; '*an action* by the trustee of a bankrupt corporation against the sole shareholders on an alter ego theory upon allegations that ... *defendants deposited corporation funds into their personal bank accounts or that corporation funds were received by the defendants personally*'") (quoting *Stodd*, 73 Cal. App. 3d at 834).

Danko filed the involuntary bankruptcy petition against debtor on October 25, 2013, more than two weeks before he filed his motion to amend the judgment in superior court to

United States District Court

For the Northern District of California

1   hold debtor and O'Reilly jointly and severally liable.  He contends that his judgment against

2   O'Reilly is not the property of the estate and is not subject to the automatic stay.

3           **a.    State Court Relied on Danko's Allegations of Fraudulent Transfer**

4                   **to Find Alter Ego Liability**

5           Here, the bankruptcy court held that the state court's ruling on O'Reilly's alter ego

6   liability found that some transfers were made, such as "monies were transferred to Mr.

7   O'Reilly's son's bank account," but that the state court did not specifically make a

8   fraudulent conveyance determination.  TE 149.  The bankruptcy court acknowledged that

9   because the state court's alter ego ruling did not make a fraudulent transfer finding (such

10  as lack of consideration), and because Danko was not seeking recovery of fraudulently

11  transferred assets or avoidance of transfer, it was possible that Danko was seeking

12  recovery against O'Reilly that may exceed the damages attributable to the fraudulent

13  transfers.  TE 138-39.   After reviewing Danko's moving papers in the state court, however,

14  the bankruptcy court determined that the damage to the law firm that Danko alleged in

15  pursuit of alter ego liability against O'Reilly "sounds like fraudulent transfers to me."  TE

16  150-51.

17          The bankruptcy court correctly found that the factual basis for seeking alter ego

18  liability against O'Reilly was a series of allegations of fraudulent transfers.  Danko also

19  argued other grounds to the state court for finding alter ego liability, such as disregarding

20  corporate formalities (citing O'Reilly's testimony that the law firm's corporate form was

21  designed for "some sort of tax function") and failing to properly capitalize the law firm.  TE

22  59-65 (Danko's Mot. Amend Judgment at 2-8).  However, to establish the requirements for

23  disregarding the corporate entity under California law, Danko relied heavily on evidence of

24  fraudulent transfers:

25          (1) to establish unity of interest between O'Reilly and the law firm, Danko cited

26  evidence of O'Reilly commingling of funds and assets, treating the corporate assets as his

27  own, and manipulating or diverting assets from the corporation, to the detriment of

28  creditors.  TE 67-71.

United States District Court

For the Northern District of California

1    (2) to establish that an inequitable result would otherwise follow, Danko argued that

2    "Rather than pay Danko the $3.2 million the jury found (after a multi-week trial) he was

3    owed, O'Reilly spent approximately the same amount of the firm's money for his cars,

4    vacations, family members, personal investments, and retirement house."  TE 72.

5        In Danko's particular alter ego claim against O'Reilly, Danko relied primarily, though

6    not exclusively, on factual allegations that would support the trustee's fraudulent

7    conveyance and avoidance claims.  Danko's own brief filed in the state court supports this

8    finding: "Danko brings this motion because the *reason* he is having trouble collecting is that

9    O'Reilly stripped the firm of assets in the three years since Danko was fired, and

10   particularly in the period leading to and following trial, in order to create that 'trouble.'"  TE

11   86 (Danko Reply Br. ISO Mot. Amend Judgment at 9 n.4).

12       In granting Danko's motion to amend the judgment to hold O'Reilly jointly and

13   severally liable as debtor's alter ego, the state court relied on the evidence that "shows

14   there is commingling of funds and assets between the law firm and Mr. O'Reilly" and that

15   O'Reilly used the law firm's assets for personal expenditures.  March 25, 2013 slip op. at 4-

16   7.  Although the state court did not make an express fraudulent transfer finding, Danko

17   concedes that "there is some evidentiary overlap between O'Reilly's alter ego liability and a

18   possible claim of fraudulent transfer to unwind the specific wrongful uses of 'corporate'

19   funds."  Danko Opening Br. at 11.

20       **b.    Danko's Alter Ego Allegations Supporting Fraudulent Transfer**

21             **Claims Belong to Estate**

22       There is no controlling authority on the question whether the automatic stay bars

23   recovery by a creditor against the debtor's controlling shareholder, a nondebtor, where the

24   creditor does not expressly pursue fraudulent transfer claims that would be squarely

25   governed by *Ahcom* and *Stodd*, but asserts alter ego claims based on factual grounds that

26   significantly overlap with the trustee's fraudulent transfer and avoidance claims against the

27   shareholder.  Danko essentially argues that he should be allowed to take advantage of a

28   loophole in the law, which he expected would entitle him to bypass the automatic stay that

United States District Court

For the Northern District of California

1   was triggered when he himself filed the involuntary petition against debtor.  Danko's

2   position is inconsistent with California law, which recognizes that the trustee "can maintain

3   an action against a defendant based on an alter ego theory if there is some allegation of

4   injury to the corporation that gives the corporation a right of action against the defendant."

5   *Shaoxing*, 191 Cal. App. 4th at 1198-99 (citing *Stodd*, 73 Cal. App. 3d at 833).  The

6   bankruptcy court's ruling, that the automatic stay applies to Danko's judgment holding

7   O'Reilly jointly and severally liable with debtor based on allegations of fraudulent transfers,

8   follows *Ahcom*, *Shaoxing* and *Stodd*.

9        In *Ahcom*, the Ninth Circuit recognized that under California law, a fraudulent

10  conveyance action to recover assets of the bankrupt belongs to the estate, giving the

11  trustee exclusive standing to bring such claims.  623 F.3d at 1250.  Although Danko

12  concedes the evidentiary overlap between his alter ego claim and the trustee's fraudulent

13  transfer claims, Danko contends that his alter ego claim against O'Reilly is not property of

14  the estate because he did not bring a fraudulent transfer claim.  *See Mejia v. Reed*, 31 Cal.

15  4th 657, 664 (2003) ("Under the UFTA, a transfer is fraudulent, both as to present and

16  future creditors, if it is made 'with actual intent to hinder, delay, or defraud any creditor of

17  the debtor.'  Even without actual fraudulent intent, a transfer may be fraudulent as to

18  present creditors if the debtor did not receive 'a reasonably equivalent value in exchange

19  for the transfer' and 'the debtor was insolvent at that time or the debtor became insolvent

20  as a result of the transfer or obligation.'") (citing Cal. Civ. Code §§ 3439.04 (a), 3439.05).

21       To support his contention that the bankruptcy court erred as a matter of law by

22  applying the automatic stay to his alter ego claims against O'Reilly, Danko relies on the

23  holding of *In re Living Hope Southwest Med. Servs., LLC*, 481 B.R. 485, 498 (W.D. Ark.

24  2012), where the district court reversed the bankruptcy court's order enjoining an

25  unsecured creditor from proceeding in a state court action against a related nondebtor

26  entity (Living Hope Southeast, or LHSE) and its CEO.  The trustee brought adversary

27  proceedings alleging that assets were shifted from the debtor entity (LHSW) to LHSE.  The

28  creditor filed a state court action seeking to pierce the corporate veil of the debtor to its

United States District Court

For the Northern District of California

shareholders and pursue judgment against the nondebtor entities as the alter egos of the

debtor's shareholders.  The bankruptcy court enjoined the creditor's state court action,

holding that the creditor had a right to pursue its alter ego/veil piercing claims, but did not

have a right to pursue the trustee's causes of action.  *Id.* at 492.  Reversing the injunction,

the district court reasoned, "the fact that [creditor] Pinewood's state court claims involve

substantially similar underlying factual allegations as the Trustee's AP claims does not

convert Pinewood's claims into the Trustee's, when the same underlying facts may give rise

to more than one legal theory of recovery."  *Id.* at 498.  The district court limited its holding

on the ground that "[t]he bankruptcy court is far from clear in distinguishing between the

alter-ego/veil-piercing claims that [creditor] Pinewood has a right to pursue and the

Trustee's causes of action which Pinewood does not have the right to pursue."  *Id.* at 499.

The court in *Living Hope* did not, as Danko contends, completely reject the argument

that the creditor's claims could be subject to the stay if there were some evidentiary overlap

between the nondebtor's alter ego liability and the trustee's fraudulent transfer allegations.

Rather, the district court criticized the bankruptcy court for failing to delineate where the

creditor's alter ego/veil-piercing claims encroached onto any causes of action that the

trustee was entitled to bring, including claims to recover assets that were fraudulently

transferred.

> Aside from enjoining Pinewood from pursuing any claims that may belong to the Trustee, the bankruptcy court should not have enjoined Pinewood from pursuing claims reserved to it as a creditor.  After thoroughly reviewing the record and considering the parties' arguments, the Court finds that the bankruptcy court erred in finding that Pinewood was pursuing the Trustee's causes of action without delineating where Pinewood's alter-ego/veil-piercing claims encroached onto any causes of action which belonged exclusively to the Trustee.  The bankruptcy court therefore also erred in ordering a seemingly permanent wholesale injunction of Pinewood's pursuit of any claims against LHSE or [its CEO] Grundy in state or federal court based, at least in part, on that finding.

481 B.R. at 499.

Unlike the bankruptcy court in *Living Hope*, the bankruptcy court here carefully

considered the alter ego allegations raised in Danko's motion to amend the judgment in the

state court, and found that in his particular case, Danko relied on allegations of fraudulent

United States District Court

For the Northern District of California

1   transfer ("O"Reilly repeatedly diverted large amounts of firm assets"), which suggested that

2   assets were transferred to the injury of the law firm ("looting of the corporation").  TE 150-

3   51.  Danko characterizes the bankruptcy court's holding as a determination that Danko's

4   claims against O'Reilly were subject to an all-purpose, general alter ego claim that could be

5   asserted only by the trustee, but the bankruptcy court did not so hold.  Rather, the

6   bankruptcy court reviewed the particular arguments raised by Danko in the state court to

7   determine whether the alter ego allegations in that particular case, and for the purposes of

8   that case, alleged injury to the debtor and would be properly brought by the trustee.  In

9   *Ahcom*, by contrast, the Ninth Circuit held that California law did not recognize a

10  freestanding general alter ego claim that treats the debtor corporation and its shareholders

11  as alter egos for purposes of all the corporation's debts, thus allowing a creditor to proceed

12  with its collection action against the sole owners of the debtor corporation.  623 F.3d at

13  1252.

14          Here, the bankruptcy court pointed out during oral argument that Danko could have

15  sought alter ego liability in the state court by arguing the "lack of corporate formalities; they

16  never had a meeting; they never had a Board."  TE 158-59.  *See Stodd*, 73 Cal. App. 3d at

17  832 ("allegations that corporate assets were converted or transferred to the injury of the

18  corporation are not necessary to invoke the alter ego doctrine").  But by seeking alter ego

19  liability in state court on the ground that O'Reilly fraudulently transferred law firm assets to

20  himself, Danko's alter ego claims assert allegations that support fraudulent transfer claims

21  for recovery of assets that the trustee has exclusive standing to bring.  *See Stodd*, 73 Cal.

22  App. 3d at 834 (distinguishing cases where "the trustee in bankruptcy was pursuing a right

23  of action belonging to the bankrupt or attempting to recover property of the bankrupt")

24  (citations omitted).  *See also In re Pac. Gas & Elec. Co.*, 281 B.R. 1, 13 (Bankr. N.D. Cal.

25  2002) ("Absent court approval, only a trustee or debtor in possession has standing to assert

26  a fraudulent transfer action."), *subsequently aff'd sub nom. City & Cnty. of San Francisco v.*

27  *PG & E Corp.*, 433 F.3d 1115 (9th Cir. 2006).

28

United States District Court

For the Northern District of California

1    Contrary to Danko's argument that applying the automatic stay to his alter ego

2  judgment against O'Reilly would result in the "absurd result" that no one could collect from

3  O'Reilly without violating the stay, the stay would not necessarily apply to "[a]ny other

4  person who obtained a judgment against O'Reilly, wholly unrelated to his law firm."

5  Appellant's Opening Br. at 15.  The only reason that the automatic stay applies to Danko's

6  attempts to enforce his judgment against O'Reilly is that he sought alter ego liability, in his

7  particular case, to hold O'Reilly jointly and severally liable with debtor, based on allegations

8  that O'Reilly fraudulently transferred debtor's assets.

9    **c.    Danko Does Not Show That His Alter Ego Claims Seek Broader**

10   **Recovery Than the Fraudulent Transfer Claims**

11   As the bankruptcy court acknowledged at the motion hearing, Danko's alter ego

12  judgment against O'Reilly is potentially broader than the trustee's fraudulent transfer

13  claims, and may reach O'Reilly's property which is not subject to the bankruptcy court's

14  jurisdiction.[1]  Given that the trustee had not filed fraudulent transfer claims by the time this

15  matter was appealed, there is no independent basis in the record for comparing Danko's

16  alter ego allegations with the trustee's intended fraudulent conveyance claims.  The trustee

17  represented, however, that the state court's findings in support of O'Reilly's alter ego

18  liability are the same facts that the trustee would need to establish to support the estate's

19  claims for avoidance and recovery of fraudulent transfers, including payments of debtor

20  funds to O'Reilly's son and former wife "for no apparent business reason," deposits of tens

21  of thousands of dollars into O'Reilly's current wife's bank account, loans of hundreds of

22  thousands of dollars to O'Reilly's personal trust with no repayment of principal for 15 years,

23  and payment of tens of thousands of dollars to O'Reilly and his wife's credit card bills

24  without promissory notes or interest.  TE 176-77 (Trustee's Opp. at 6-7 (citing March 25,

25  2013 slip op. at 4-5)).  On this record, based on Danko's arguments before the state court

26  _____

27      [1]    The trustee contends that Danko waived his argument that the claims giving rise
to the amended judgment are broader than the fraudulent conveyance claims owned by the
28  estate, but the record demonstrates that Danko argued this point at the motion hearing and
the bankruptcy court considered this argument.  *See* TE 129-32, 143-47.

United States District Court

For the Northern District of California

1   that O'Reilly commingled his assets with those of the law firm, and in the absence of any

2   showing in the record that Danko sought to enforce his judgment against assets of O'Reilly

3   that are completely separate and apart from the assets of the estate, Danko's alter ego

4   claims not only overlap with the trustee's potential fraudulent transfer claims, but also lack

5   any factual basis to distinguish Danko's potential alter ego recovery from the potential

6   fraudulent conveyance recovery, which is exclusive to the trustee.

7        In addition to finding an identity of factual allegations underlying Danko's alter ego

8   claims and the trustee's fraudulent conveyance claims, the bankruptcy court held that

9   Danko's enforcement of his alter ego judgment against O'Reilly would interfere with the

10  estate's fraudulent transfer claims and administration of the estate.  TE 155-56.  *See In re*

11  *Cady*, 266 B.R. 172, 183 (B.A.P. 9th Cir. 2001) (where "a creditor uses a recorded abstract

12  to interfere with the administration of estate assets, such conduct will rise to the level of an

13  automatic stay violation"), *aff'd*, 315 F.3d 1121 (9th Cir. 2003).  The bankruptcy court thus

14  concluded that the automatic stay barred prosecution by Danko on his amended judgment

15  against O'Reilly, as a joint and several judgment debtor in the state court action, pursuant

16  to 11 U.S.C. § 362(a)(3) (staying "any act to obtain possession of property of the estate or

17  of property from the estate or to exercise control over property of the estate").

18       In the absence of directly controlling Ninth Circuit authority, the court finds, based on

19  the current record, that the automatic stay provision prevents Danko from enforcing his

20  alter ego judgment against O'Reilly, in light of the particular circumstances and evidence

21  supporting the alter ego finding in state court.  The factual allegations underlying Danko's

22  alter ego judgment against O'Reilly directly coincide with allegations that would support

23  fraudulent transfer claims, which are property of the estate that may be brought only by the

24  trustee.

25              **d.     Unusual Circumstances Establish That Interests of Debtor and**

26                       **O'Reilly Are Inextricably Intertwined**

27       Alternatively, even if the allegations supporting the alter ego judgment are not

28  property of the estate under *Ahcom*, *Stodd* and *Shaoxing*, the evidence in the record

United States District Court

For the Northern District of California

presents "unusual circumstances" showing that the interests of the debtor and its

shareholder, O'Reilly, are inextricably intertwined. *A.H. Robbins Co., Inc. v. Piccinin*, 788

F.2d 994, 999 (4th Cir. 1986)).  Courts outside the Ninth Circuit have recognized that "[a]

stay against a non-bankrupt codefendant or third-party defendant requires some 'unusual

circumstances,' for instance, 'when there is such identity between the debtor and the

third-party defendant that the debtor may be said to be the real party defendant and that a

judgment against the third-party defendant will in effect be a judgment or finding against the

debtor.'" *Solow v. PPI Enterprises (U.S.) Inc.*, 150 B.R. 9, 11 (S.D.N.Y. 1992) (citing *A.H.

Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).  The Ninth Circuit has

questioned, but not rejected, the unusual circumstances exception to the general rule that

"the automatic stay of section 362(a) protects only the debtor, property of the debtor or

property of the estate.  It does not protect non-debtor parties or their property." *In re

Chugach Forest Products, Inc.*, 23 F.3d 241, 246 (9th Cir. 1994).  *See In re Excel

Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("'In the Ninth Circuit, the vitality of

the 'unusual circumstances' exception is not clear.'") (quoting *Chugach*, 23 F.3d at 247).

Here, the state court made findings of commingling of funds and assets between the law

firm and O'Reilly that are sufficient to support an "unusual circumstances" exception to the

general rule that the automatic stay protects only the debtor or property of the estate.

### e.    Danko Filed Motion to Amend State Court Judgment After Triggering the Automatic Stay

One issue not addressed by the parties is whether the post-petition state court

proceedings on Danko's motion to amend the pre-petition judgment against debtor should

have been stayed by operation of the automatic bankruptcy stay.  Danko filed the

involuntary petition against debtor on October 25, 2012, then proceeded to file his motion to

amend the judgment in state court on or about November 13, 2012, to hold O'Reilly jointly

and severally liable on the judgment entered against debtor on July 11, 2012.  Danko

contends that his motion to amend judgment was heard by the state court without objection

that the bankruptcy stay applied, but the record is clear that the trustee was not appointed

1    until February 5, 2013.  The notice of stay was subsequently filed on the state court docket

2    in April 2013.

3            Because the issue presented on appeal concerns Danko's enforcement efforts, and

4    the parties do not appear to dispute whether the state court proceedings on the motion to

5    amend judgment violated the automatic stay, the court need not address the applicability of

6    the automatic stay on those post-petition proceedings.  The court notes, however, that any

7    concerns raised by Danko over the unfair advantage given to O'Reilly, by staying Danko's

8    collection efforts, are alleviated by Danko's apparent disregard of the automatic stay, which

9    was triggered by Danko's own filing of the involuntary petition against debtor, as

10   demonstrated in the procedural history of this case.

11            **2.     Arguments Waived on Appeal**

12           Danko raises two arguments on appeal that were not raised in the bankruptcy court.

13   First, Danko argues that the trustee cannot prohibit Danko from enforcing his attorney's fee

14   judgment for $107,397.50 against O'Reilly.  Danko contends that this amount was awarded

15   only against O'Reilly and was not based on the state court's finding of alter ego liability.  As

16   the trustee points out, Danko did not present this argument to the bankruptcy court.  The

17   court will not consider the issue for the first time on appeal in the absence of exceptional

18   circumstances.  If Danko seeks to enforce that portion of the judgment solely against

19   O'Reilly, Danko must seek relief from the automatic stay.

20           Second, Danko argues that the trustee does not have an interest in the fraudulently

21   conveyed property because those assets have not yet been recovered and are not property

22   of the estate.  The Ninth Circuit has not ruled on the issue whether fraudulently transferred

23   property is considered part of the estate under § 541(a)(1), even before it comes into the

24   estate by operation of § 541(a)(3), but Danko notes the split of circuit authority on this

25   question, criticizing the broader view that fraudulently transferred property belongs to the

26   estate under § 541(a)(1), and is therefore subject to the automatic stay even before it is

27   recovered.  *Am. Nat'l Bank of Austin v. MortgageAmerica Corp.* (*In re MortgageAmerica*

28   *Corp.*), 714 F.2d 1266, 1275 (5th Cir. 1983) ("it makes the most sense to consider the

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

debtor as continuing to have a 'legal or equitable interest' in the property fraudulently transferred").  Some circuits hold a narrower view that § 541(a)(3), rather than § 541(a)(1), governs § 362's stay as applied to fraudulently transferred property, and that such property does not become part of the estate until it is recovered.  *Rajala v. Gardner*, 709 F.3d 1031, 1037-38 (10th Cir. 2013) *cert. denied*, 134 S. Ct. 164 (2013); *Fed. Deposit Ins. Corp. v. Hirsch* (*In re Colonial Realty Co.*), 980 F.2d 125 (2d Cir. 1992).  Under the narrower view, "pursuant to § 541(a)(3), the automatic stay does not apply to fraudulently transferred property until the transfer is avoided under § 548, and the property is recovered under § 550."  *Rajala*, 709 F.3d at 1038.

Danko failed to raise this challenge to the automatic stay before the bankruptcy court, either in his briefs or during oral argument, even though the trustee's opposition brief relied on *MortgageAmerica* and the bankruptcy court cited that authority at the hearing.  TE 140, 160.  Danko has not shown exceptional circumstances for considering this new argument, raised for the first time on appeal, and has therefore waived this argument.

### 3.   Preliminary Injunction

Danko argues that if the trustee wants to pursue O'Reilly's assets as fraudulent transfers for recovery by the estate, the trustee should seek a preliminary injunction.  At the hearing, the bankruptcy court noted that if Danko's claims against O'Reilly were not subject to the automatic stay, the trustee may seek injunctive relief.  TE 151-52.  *See Excel Innovations,* 502 F.3d at 1093-94 ("Section 105(a) gives the bankruptcy courts the power to stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but "threaten the integrity of a bankrupt's estate.").  Because the court finds that Danko's alter ego claims and judgment against O'Reilly are subject to the automatic stay, it is not necessary to remand this matter for consideration of the standard for issuing a preliminary injunction.

\\

\\

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the reasons set forth above, the court AFFIRMS the order of the bankruptcy court denying Danko's motion for order that the automatic stay of 11 U.S.C § 362(a) is inapplicable to Danko's judgment and his underlying claims against Terry O'Reilly.

**IT IS SO ORDERED.**

Dated: February 3, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge

21